Leon R. Murray #24820
IMSI J-Blk
P.O. Box 51
Boise, Idaho 83707

Pro Se

U.S. DISTRICT COURT
U.S. BANKRUPTCY COURT
DISTRICT OF IDAHO

DEC 11 2001

M. REC'D
LODGED FILED 9

In The United States District Court
For The District of Idaho

| | |
|---|---|
| Leon R. Murray<br>Plaintiff,<br><br>vs<br><br>Sheriff Wayne Tousley<br>et. Al.,<br>Defendants | Case No. CV01-229-S-EJL<br><br>Plaintiffs Third Amended Prisoner Civil Rights Compliant |

Comes Now, Leon R. Murray, Plaintiff Pro Se pursuant to this Courts Order filed November 19, 2001 files this Third Amended Compliant.

# Cliam I

## Lighting Cliam

Plaintiff cliams that Keeping low wattage night lights on in his cell and Cell block all night obstructs his sleep and Exabberates His underlying phy colo gicial problems of anger, impulse control, Organic personality Disorder, Bi-Polar disorder and Chronic Post Tramadict stress disorder and amounts to cruel and Unusual punish -ment under the Fourteeth/Eighth Amendment

## Statement of Facts.

A. 1. Plaintiff states that he was Subjected to (24) hour (7) day a week lighting during all his periods of Stays at The Twin Falls County Jail. Which are as follows but not limited to the following;

2. Pliantiff was intially incarcirated on 9/22/1997 and Stayed at the Jail until transfered to the prison on 6/5/1998 approximatly (249) days.

3. During the forgoing time period Pliantiff did file a grievance and exhaust his administrative Remedies to his re collection. The initial Compliant was agianst Deputy VIRgil.

4. According to the grievance process at the time a Jail inmate wrote out his ISSUE/compliant on a inmate kite. If He was denied relief then He would appeal the issue on the reverse Side of the Compliant. However there are occassions when the reviewing autho would be Defendants Captian Wright or Lt. Dahl in which there is no appeal process. The New Revised grievance form of August 16, 2000. The grievance is answered by the final awthority

there is no longer a Reverse Side to the Compliant/Kite for Appeal.

5. AS to this Clam plaintiff alleges that He did file a grievance and appeal it on the reverse Side. However He does not have it to Submitt to the Court, but it Should be in his file hold by the defendants.

6. Further Plaintiff believes, equitable folling would apply as plantiff states there is case law for this period of time which States that if the grievance System did not provide for Monetary relief them its exhaustion is not nessary under 42 U.S.C § 1997 (E)(A) Rumbles v Hill, 182 F.3d 1064, 1069 (9th Cir 1999) Also See Bishop v Lewis, 155 F.3d 1094,

1095 (9th Cir 1998) (PLRA AMENdment and Requirement that Adminstrative remededies be exhausted before § 1983 Cliam can be brought is not retro-active).

7. To Plantiffs Knowlege there is no Monetary Relief avialable under the grievance procedure now or between 9/22/1997 thru 6/5/1998, at the Twin Falls County Jail.

8. Plaintiff states that during 9/22/1997 thru 6/5/1998 his Subjection to (24) hour lighting (7) days a week Caused Him sleep deprevation, Emotional and pschologicial Harm in which He did Have to Seek Medicial Care and given the Medication TRAZAdone periodicaly.

9. Plaintiff States that defendants placing Him in this Envioroment/Condiction during this time may ~~cause~~ also cause Health problems in the future as well as those he already Suffered. See; HELLING V MCKINNEY 509 U.S. 25 (1993) (Eighth Amendment protection extends to Condictions that threaten to cause health problems in future, as well as Current Serious health problems).

10. Plaintiff states that as to defendants to this Claim He believes the City of Twin Falls, Sheriff Wayne Tousley and Captian Wright or Lt. Dahl would be responcible.

11. Pursuant to Idaho Code § 31-2202 (6), (10) The Sheriff of The County is responciable for

the Care and Maintenace of the Jail inmates in his Custody. However defendants Capt. Wright and Lt. Dahl run the day to day operations at the Jail, and Review inmate grievances.

12. The plaintiff at this point in this case does not exactly know what defendant or defendants are responsible, However plaintiff does Claim that whomever is responsible Knew or should have known because federal Law-or-case Law was established prior to September 1997. LaMaire v Maass 12 F.3d 1444 (9th Cir 1993), Keenan v. Hall, 83 F.3d 1083, 1086-7 (9th Cir 1996) (24 hour lighting Unconstitutional and Causes psheological Harm in Violation of 8th U.S. Amend).

13. Plaintiff is Seeking nominal damages of (1) one dollar. Plaintiff is futhther seeking damage award for deprivation of Sleep, Emotional Stress anxiety, and phscolegicial Harm to be determined by the Jury. Plaintiff is further Seeking punitive damages to deter the defendants from further Similar action.

14. Plaintiff is Seeking injuctive Relief from further Harm. Plaintiffs original Burglary Conviction is on appeal to The Idaho Supreme Court and May be Sent to the District Court in Twin Falls County for Re-Sentencing. Plaintiff further also Has the Right to file for Post Convict Relief on the Burglary Charge after determination of His direct appeal.

15. Plaintiff was convicted one (1) Count of Assualt/Battery on a Jail Officer i.e. Cpl. Doane and Sentenced to (4) years fixed (1) year indeterminate. On 11/14/01 See Appendix (A), (B).

16. Plaintiff has already requested His attorney to file a Motion for Re-Consideration of Sentence pursuant to Idaho Criminal Rule (35), and a hearing on the Matter, Plaintiff also Has the Right to appeal and file a postconviction in which He Could be placed in the Twin Falls County Jail in the future.

17. Plaintiff does have a history in Twin Falls County dating Back to 1986, It is very possible That He Could be incarserated There in the future.

18. Plantiff Requests injuctive relief in that the defendants are ordered to follow federal Law and dis-Continue housing Plantiff and other inmates in a cell with the lights on (24) hours a day (7) days a week.

Lighting Claim Subpart (B).

1. Plantiff states on 10/28/1999 he was transfered back to the Twin Falls County Jail and Subjected to thies (24) hour (7) day a week lighting policy until 12/3/1999 which is approximatly (35) days.

2. On 11/18/1999 plantiff filed a intial Concern/grievance on the (24) hour lighting policy which was answered by Deputy T.S. Riley on 11/20/1999. In which He denied relief.

3. On or after 11/20/99 Plaintiff filed a grievance on the Reverse side of the 11/18/99 concern. Plaintiff Put The defendants on Notice of the Federal Case LANIER V MASS (9th Cir 1994) which established That (24) hour (7) day a week lighting in the Cell was Unconstitutional.

4. On 11/22/99 Defendant Lt. Dahl Answered the grievance stating "This is our policy For Safety Reasons - They will stay on-". (See Intial Comp. App. (A-1) (A-2)).

5. Plaintiff States that He Suffered Sleep deprivation; Stress, anxiety, and psycholog-ical harm during the periods of 10/28/99 thru 12/3/99. Plaintiff to his Recollection had to Seek Medical Attention and was prescribed Trazadone

6. Plaintiff States that the defendants on this claim would be the City of Twin Falls, Sheriff Towsley and Lt. Dahl. Plaintiff bases this on defendant Dahls Answer on 11/22/99 grievance in which He states "This is our Policy for Safty Reasons - They will stay on-" Emphisis added.

7. Plaintiff states that according to the TFCJ "Written Grievance Procedure" It states in Part "The Sheriff or His designee shall give their Final and binding written Reply within (10) days of the grievance". (See Appendix (J) (#6) initial Complaint). Emphisis mine which is the Rules & Regulations of The T.F.C.J. given to inmates.

8. Plantiff states that Lt. Dahl is The City of Twin Falls And Sheriff wayne Tousley designee in the grievance procedure at The Jail.

9. Plantiff is Seeking nominal damges of (1) dollar. Plantiff is Seeking Monetary releif for Sleep deprivation, psycological Harm and Emotional Stress to be determined by the Jury. Plantiff is Seeking Punitive Damages to prevent and punish defendants for continuing their lighting policy in Light of Clearly Established Law LeMaire v Maass 12 F.3d 1444 (9th Cir 1993) Keenan v Hall, 83 F.3d 1083, 1086-7 (9th Cir 1996).

10. Plantiff is Seeking inJuctive Relief To order [illegible] to discontinue their (24)hour (7) day a week Lighting Policy

Lighting Claim Subpart (C).

1. On 7/26/00 Plaintiff was transfered back to the Twin Falls County Jail and Subjected to (24) hour Lighting (7) days a week until 8/31/00, which is approximatly (35) days.

2. On or about 8/2/00 plaintiff wrote a Concern among other issues about the (24) hour (7) day a week lighting policy. On 8/5/00 Plaintiff appealed the denial of the Lighting Policy and other issues on Side #2 of The form in accordance with grievance procedure

3. On 8/7/00 defendant Lt. Dahl denied Relief of The (24) hour (7) day a week Lighting Policy stating "The Lights STAY ON"! (See Prisoner civil Rights Comp. AS supplmented APPENdix (A)).

4. On 8/6/01 Plaintiff was Suff
phycological Harm due to th
24 hour (7) day a week lighting
policy. Plaintiff was Suffering f
Sleep deprevation, anxioty, Stress,
Anger Control, Personality disorder,
Bi-Polar disorder, Chronic Post tram
Stress disorder. All which were
Exabberrated by being subjected
to (24) hour lighting Since 7/26

5. Plaintiff states that due to t
Defendants (24) hour (7) day a
week lighting policy and it
phycologically Harmful effec
on Him and His Underlying
phycological problems. He w
into a uncontrollable Rage
Attack.

6. Due to this Rage Attack induced by the (24) hour lighting. Plaintiff was Surrounded by (4) Jail Deputies and Subdued By Spraying Him with chemicial Agents.

7. Plaintiff Suffered enourmous physical pain by being Sprayed with Chemical agents in the eyes. Plaintiff further Suffered damages by being Charged with (3) Counts of Assualt/Battery on Jail Personell.

8. Plaintiff further Suffered damages by being found guilty of one Count of Assualt/Battery upon defendant Cpl. Doane and Sentenced to (4) Years Fixed (1) Year indeterminate in The Idaho Dept of Corrections. See Appendix (A) (B).

9. Plantiff Further Suffered Emotional And Physcological Harm by being Surrounded And Sprayed with Chemical Agents by (4) Jail Deputies. This is due to The Fact that Plantiff ~~the~~ was already Suffering from Chronic Post-traumadict Stress disorder before the incident occured, because He was Verbally And pshyically abused as a child, while in Reform School, In The US NAVY, and shot by police in 1983. (See Report Of Dr. Beaver dated 6/15/01) (motion To Clarify Comp. App. (I)).

10. Due to the Rage attack induced by the (24) hour (7) day Lighting Policy Plantiff was placed into Adminstrative Segregation in The T.F.C.C. Also The

Idaho Dept of Corrections for Approx-imatly (12) months I.E. 8/06/00 Thru 9/2001. Plantiff is now Considered a Violent offender by the IDOC and recieved (10) pts on his Classification that has Created a significant Hardship on Him. He will not be eligable for Parole, Medium Security, Minimum Security, work release for at least The Next 4 (4) years.

11. The defendants Responcible for the Lighting Policy are The City of Twin Falls, Sheriff Wayne Tousley, and His designee Lt. Dahle. These defendants as well as Doane, Callin, Hartley, Conger are Responcible for The phycologicial Harm Suffered

by Plaintiff, on 8/6/00.

12. Plaintiff is requesting nominal damages of (1) dollar, Plaintiff is further requesting Monetary damages for Pain and Suffering, and psychological Harm to be determined by the Jury. Plaintiff is Seeking punitive damages to Stop them and punish them for violating Clearly Established Law in housing Plaintiff in a Enviorment with the Light on (24) hours a day (7) days a week which Causes psycological Harm. (See LAMAIRE v MAASS 12 F.3d 1444 (9th Cir 1993) KEENAN v HALL, 83 F.3d 1083, 1086-7 (9th Cir 1996) And Exaggerated His current pschological illness.

13. Plaintiff is Seeking Injunctive Relief which orders defendants to discontinue this (24) hour (7) day a Week lighting Policy.

14. Plaintiff is Currently appealing His Convictions for Burglary and Assualt/Battery on Jail officer. To which He is asking for reduction of Sentence. He also has a Right to file for Post Conviction Relief in which He Can be housed in The Twin falls County Jail, in The future. Plaintiff also has a History in The Twin Falls area dating back to 1986 which also indicates That He Could be Housed in The Twin falls County Jail.

Lighting Cl, Aim Subpart (D).

1. On 6/24/01 Plantiff was taken back to the Twin Falls County Jail and subjected to (24) hour lighting (7) day a week policy until 6/27/01 which is approximalty (3) days.

2. Plantiff suffered from sleep depev-vation and pscolugecial harm, Emotional distress.

3. Plantiff states that the defendants responcible for the Lighting Policy are The City of Twin Falls, Sheriff Wayne Tousley and his designee Lt. Dahle.

4. During this Time period Plantiff wrote a Concern on 6/27/01 to deputy LOZA about yelling and the 24 hour lighting. This Concer

was never answered as Plantiff was taken back to the prison on 6/27/01. (See Motion to Clarify Comp. App. (K))

5. Pliantiff wrote another concern on 6/24/01, because of deniel of Mood Stabilizing Medication "Tegratol" and the 24 hour Lighting. This Concern was Never answered as pliantiff was transfered back To The prison on 6/27/01. (See Motion To Clarify Comp. App. (L)).

6. Pliantiff is requesting nominal damages of (1) dollar. Pliantiff is requesting monetary damages for pshcological harm, Sleep deprivation, Emotional distress to be determined by the Jury. Pliantiff is requesting punitive damages to deter defendant

from Violating Established law.
id., LaMaire v Maass, Keenan v Hall
Citations omitted.

7. Plantiff is requesting injuctive relief ordering the defendants to discontinue their (24) hour (7) day a week lighting Policy.

8. Plantiff does Expect to return to Twin Falls County Jail for PostConviction matters and reconsideration on His Sentence for Burglary and Assualt/Battery on a Jail Officer.

Lighting Claim Subpart (E).

1. On 8/12/01 Plaintiff was transfered Back to the Twin falls County Jail and Subjected to the (24)

hours lighting ablaze approximatly until 8/20/01 which is (8) days.

2. Plaintiff Suffered Sleep deprivation, and phsyiologicial harm.

3. The Defendants responsible are the City of Twin Falls, Sheriff Wayne Tousley and Maintenace officer Stan McDonnald and Deputy Sturiger.

4. In this particular incident plaintiff did file a grievance on the New revised 8-16-00 "letter to Detention Staff" on 8-17-01.

5. The New Revised Grievance Form does not Have a reverse Side For appeal and the Answer is final.

6. On 8/29/01 the Maintance officer Stan McDonnald responded to the grievance concerning the (24) hour lighting policy stating "nite Lite 7 watt light Bulb 34 watt"!

7. Plaintiff resubmitted the grievance for a more detailed response and on 8/30/01 Deputy Stringer answer-ed "Ted 9 watt, 7x40 @ night". She also cited Idaho Jail standards :18.33. (See Suppl. Aff. Leon Murray App. (A)).

8. To Plaintiffs knowlege This is Exhuast-ion of Administrative Remedies under The New Revised 8/16/00 "Letter to Detention STAFF" Form.

9. Plaintiff is Seeking nominal Damages of (1) dollar. Plaintiff is Seeking Monitary Damages for Sleep depurvation and physcological harm for (8) days. Plaintiff is Seeking Punitive Damages to Punish defendants and deter them from violating clearly established Federal Law and Plaintiff civil Rights. See, LAMAIRE v MASS, AND KEENAN V HALL supra citation omitted

10. Plaintiff is Seeking injuctive relief to order plaintiffs to discontinue their 24 hour (7) day a week lighting Policy. Plaintiff does expect to return to the Twin Falls County Jail for Post-Conviction Matters in his Criminal Cases.

Lighting Claim Subpart (F).

1. Plaintiff States that He was transfered To the Twin Falls County Jail for the Sentencing on (1) Count of Assualt/Battery on Jail Officer Cpl. Doane on 11/10/01. Plaintiff was Subjected to the (24) hour (7) day a week lighting Policy by the defendants until 11/16/01 which is approximately (6) days.

2. Plaintiff did suffer Sleep deprivation and phscological Harm.

3. Plaintiff States that The defendants to this Claim are the City of Twin Falls, Sheriff Wayne Tousley and His designee.

4. Plaintiff did not file a grievance on this Claim as it is futile to file any further grievance on the (24) hour lighting Policy. Plaintiff states His past treatment by the defendants including the Criminal Charges has had a chilling effect on his desire to file any further grievances.

5. Plaintiff States That the Named defendants are on notice to His grievances by the way of this Law Suit and Refuse to Change this (24) hour lighting Policy

6. Plaintiff seeks nominal damages of (1) one dollar. Montary Damages for Sleep deprevation, pshiological Harm to be determined by the Jury

7. Plaintiff requests Punitive Damages to punish and deter the defendants from violating clearly establisted federal Law i.e. LAMIARE v MAASS and KEENAN v HALL Supra. citation omitted

8. Plaintiff does Seek injunctive Relief ordering Defendants to discontinue their (24) hour (7) day a week lighting Policy. Plaintiff does expect to be returning to The Twin Falls County Jail for PostConviction Matters on his Criminal Charges. Plaintiff further Has a history in Twin Falls Since 1986.

9. Plaintiff States that all grievances refered to on the Lighting Claim Subparts (B) thru (F) have been Submitted to the Court as part of The previous Complaints and/or Affidavits.

## Cliam II

DELIVERY OF SUPPLIES CLIAM

Phlantiff cliams that delivery of Supplies, Medication, personal and Legal Mail at all hours of the night and early morning obstructing His Sleep and Causing pschological Harm amounts to cruel and Unusaul punishment under the Eigth/Fourteeth Amendments.

## STATEMENT OF FACTS

1. Plaintiff States that upon his incarceration at the Twin Falls County Jail on September 22, 1997 or Shortly after He became Subjected to being yelled at, woken up by noise, slamming bean Slots

Or being called to the booking area over the intercom to deliver Supplies, Medications, Legal Mail, or personal Mail.

2. Pliantiff States that He distinctly Remembers a Deputy DEE a FEMale Officer. This Officer had a Common practice of yelling "RAZORS!" "RAZORS"! over and over! as early as 4:30 Am in the morning. This officer Repeated This process for every tier at The Jail which there are (9) tiers in The imediate area. She would Yell This at least (5) times for each tier which amounted to Wakening up everybody in The Jail even if They did not want a Razor for That day.

3. Pliantiff does not recollect if He personaly put in grievances at That Time, but believes many other inmates did. at that Time Period.

4. Pliantiff does distinctly Remember waking up very upset, angry, and yelling back at officer Bee to quit yelling. In which She would reply It was her duty and She would Continue to yell on pliantiffs Cell block as well as in the hallway and other Cell blocks. This would go on for approximatly (30) to (45) min every morning that She worked.

DELIVERY OF SUPPLIES SUBPART.(b)

1. Pliantiff States that another officer Deputy Virgil dating back to 11/27/99 would also Continue this policy Of passing out Razors and Medicatio

as early as 4:30 Am in the Moring.

2. This would Consist of yelling, Rolling The Med cart onto the tier, opening, and banging shut the Bean Slots on as many as (8) Cells on tier #100. every morning He worked.

3. On 11/27/99 Plantiff wrote in Con--juction with the (24) hour lighting This issue of passing out supplies at the early moring hours to Deputy Virgil, a grievance. (intial Comp. App. (B)).

4. On 11/29/99 Deputy Virgil answered His Concern/Grievance by stating that this was nessary due to the population of inmates and The amount of Time to get Things done. Deputy Virgil also Justifyed the (24) hour Lighting Policy in His reply (See initial Complaint App. (B)).

4. On 11/30/99 Plaintiff wrote on the reverse side of the 11/27/99 grievance to Exhaust his administrative remedies.

5. On 11/30/99 the Sheriff Wayne Tousleys Designee Lt. Dahl answered plaintiffs 11/27/99 grievance appeal stating "Things will stay ~~[illegible]~~ As They ARE - I suggest you Learn to Cope with your Enviroment!" (See initial Comp. App. (B)).

6. Plaintiff states that defendant Lt. Dahls answer on the Delivery of Supplies and scheduling issue is final and binding in accordance with grievance procedure. (See inmate Rules & Regulations "written grievance Procedure" initial Comp App. (J) #(6)).

7. This Time Period is between 10/28/1999 thru 12/03/1999 Approximatly (35) days

8. Defendants on these Claims would be Deputy Dee, Deputy Virgil and Lt. Dahle for upholding this policy.

9. Plaintiff Suffered sleep deprivation and physiological Harm, Emotional Distress.

10. Plaintiff Requests nominal damages of (1) dollar, Monitary award to be determined By the Jury, and Punitive award to deter defendants from violating Clearly Established LAW i.e. WILSON V SEITER 501 U.S. 249 (1991) (prison condition cannot rise to the level of cruel and unusual punishment unless the Condition produce "the deprivation of a single, identifiable human need such as Food, warmth, or exercise Id. At 298) Plaintiff States that uninterupted Sleep is a identifiable need. Also See; KEENAN V HALL 83 F.3d 1083, 1089, 91 (9th Cir 1996) (8th. Amend. Cliam stated when subjected to Constant noise) LEWIS V LANE, 816 F.2d 1165, 1171,

(7th Cir. 1987) (8th Amend Claim Stated when inmate claimed that guards regularly banged on bars to harass inmates, even though they claimed procedure nessary to test strength of Bars).

11. Plaintiff Seeks injuctive relief ordering Defendants to discontinue the Forgoing Policy, Practice and Custom of passing out Supplies between the hours of 10pm to 6AM, which includes but not limited to Razors, paper, pencils, Toothpaste, soap, toilet paper, cleaning Supplies, medications unless nessary, Legal Mail, personal Mail ect.

Delivery of supplies Claim (C).

1. On or about 7/26/00 plaintiff was transfered to the twin Falls County Jail and remained there until 8/30/00 Approximatly (35) days

2. On or about 8/14/00 while living in Cell block #100. I was awaken at approximatly between the hours of 12:30 AM to 1:00 AM over the inter-com. The officer stated it was Time to come up to the booking area and get my indigents supplies i.e. personal writting paper, envolopes, penicils, soap, toothpaste, Tooth brush

3. Plaintiff refused to get up and get dressed and walk up to the front of the Jail to get His indigent Supplies because of the early moring Hours.

4. Plaintiff states that the defendants Have a Common Policy, Practice and Custom of passing out indigent supplies in the early moring hours.

5. Pliantiff states that on or about 8/5/00 at Approximatly 1:00 Am Cpl. Dennis opened the cell door which are very noisy to deliver my cellmate Richard Cletuns legal mail. I Complianed to him at that time about being continualy disturbed at the early morning hours. Cpl. Dennis apoligized.

6. On 8/5/00 Pliaintiff was emotionaly Disturbed and Highly agitated due to his current mental Health problems which were being Exabberatted by the (24) hour lighting and the constant noise created by being woken up in the early morning hours to deliver supplies, mail, Razors ect.

7. Pliantiff was further agitated and furstrated because since 8/4/00 Pliantiff continuly asked Defendants Doane, Callin, Hartley and Conger for his indigent supplies. This continued until the afternoon of 8/5/00.

8. On 8/5/00 Pliantiff wrote a concern Complianing that He was continually being woken up in the early morning hours citing the two previous incidents and that because he didn't get up at 1:00 am in the morning. He was now being denied his indigent supplies. Pliantiff also wrote that allthough He asked Cpl. Doane, Callen Hartley, and Conger for the supplies They were still being withheld from Him.

9. On the Same Concern dated 8/5/00 Plantiff also complained that He was Suffering from the lights being on (24) hours a day; that He asked Deputy Rivera to talk to Lou Probasco about getting the Medication Trazadone. That He was being denied this Medication or to be Seen by the Doctor although He requested it a number of times.

10. Plantiff Put this grievance in the cell block door and He later learned That it was picked up and placed in a grievance basket by Cpl. Dennis, who stated to Him at a Later time He remembers this particular grievance dated 8/5/00

11. To Plantiffs Knowlege the grievance would be directed to

to Cpl. Doane, because She is the Ranking officer named in the grievance, and more likely than not would have been the one to answer it. If in fact the Plaintiff would have ever received it back.

12. Plaintiff was not given his indigent Supplies of writing paper, envolopes, soap, toothpaste, pencil, or exchange a tooth bush on 8/5/00. Plaintiff was not taken to See the Medical or given the Medication Trazadone.

13. On 8/6/00 plaintiff did not receive his indigent supplies or See the Medical for Trazadone. After a Stressful visit in which was terminated after (20) minutes and being yelled and laughed at plaintiffs Mental Condiction. He went into a Rage and was Surrounded by Cpl Doane and the (3) other officers named in the 8/5/00

grievance.

14. Plantiff became fearful that he was going to be attacked by Cpl. Doane and The (3) deputies. He pushed Cpl. Doane Back and He was Sprayed with Mace. Plantiff was taken to adminstrative Segregation.

15. On/8/8/00 plaintiff wrote a grievance to the fact that The 8/5/00 grievance was not returned or answered concering the indigent supply issue involving the Cpl. Doane, Callin, Hartly, Conger,. OR The Medical issue concering Rivera or Probasco.

16. On 8/10/00 defendant Lt. Dahl the reviewing authority stated "MR MURRAY I don't SEE YOU HAVE a valid grievance on a one Time incident." (See initial Comp. App. (B)).

17. On 8/8/00 Plaintiff wrote a addi-tional grievance outlining in more detial the early morning hour being woken up for for indigent supplies, not recieving the supplies, and retaliation for writing a concern about the supplies, (See initial Comp App.(B.)).

18. On 8/10/00 Lt. Dahl answered this grievance stating "MR MURRAY - Your Version OF This EVENT And its cHronology ARE Quite REVERSED From who stArted The CONFRONTATION-" (See initial Comp. App.(B)).

19. Plaintiff states that He was denied His indigent supplies for a week (7) day period, because He would not get up and get dressed at 1:00 Am and go to Booking Area to get Them.

Delivery of Supplies claim (D).

1. On 8/15/00 Plaintiff wrote a grievance Concerning the fact that The Lights were not turned down until 12:45 AM because Medication had not yet been pass out and turned back on at 5:00 AM.

2. On 8/16/00 defendant Capt. Wright the final reviewing authority and Highest Ranking officer at The Jail answered Stating "I have checked this out and Meds were being passed out at This time, Sorry".
(See initial Comp. Supp. (D-1))

Delivery of Supplies Claim (E).

1. On 8/20/00 Plaintiff wrote another grievance Concering the (24) hour lighting and the delivery of supplies issue in a detailed

manner. Plaintiff Complained about the Fact That Razors and Medications were being passed out as early as 4:25 Am And as Late as 100 Am the next morning. Plaintiff Complained that officers felt they Could pass out Meds, legal Mail and anything they want night or day. That They Come on The tier Slamming bean Slots anytime night or day instead of using The keys to close them properly, Plaintiff Complained about not being able to get (8) hours of Continued Sleep due to the scheduling of delivers and the noise. Plaintiff Stated He had grieved These issues at least (5) Times since 1997, and ask That these scheduling practices be looked into and revised.

2. On a undisclosed date ~~defendant~~ which plaintiff believes was within a

Couple of days. Defendant Capt. Wright The Highest Ranking officer at the Jail, and The Sherriffs designee answered by stating "MR MURRAY WE do not Like YOUR Situation any More than You, to Keep Fighting The System only MAKES it worse, My officers do The best They can being Short Handed, My Advise is FOR You to work with the System not against The System!" (See initial Comp. Supp App. (E)).

Delivery of Supplies ([redacted])(F)

1. On 8/20/00 Plaintiff wrote a grievance Concerning the Fact That His prescribed Sleeping, anxiety, Stress, medication,

"TRAZADONE", was not being passed out until 1200 AM in the morning. He asked that it be passed out at 900pm.

2. On a undisclosed time defendant Capt. Wright the reviewing and final authority stated in response to the 8/20/00 grievance " Please take this up with the Facility Nurse as I will not make this decision". (See initial Comp. Supp. App (E-1)).

3. Plaintiff does remember requesting through a Medicial kite (by asking a officer to fill it out) if His Trazadone could be given to him at 9:00 pm. This was Verbaley denied by Defendant Lou Probasco.

Delivery of Supplies (6)

1. On 8/20/00 Plaintiff wrote a grievance because Toilet paper was being passed out on a regular bases at 12:00 Am. Plaintiff asked for a additional Roll of Toilet paper in Case one ran out;

2, On a Undisclosed dated Defendant Capt. Wright Answerd The grievance by Stating, "2 Rolls of Toilet paper would be nice but The rules stands 1 Roll only. However maybe you Could Consider requesting toilet paper one day in advance"! (See initial Compliant App. (E-2)).

3. Plaintiff States that 2 Rolls or asking for one (1) in advance does not Change The Fact That its being passed out at 12:00 Am in The morning.

Delivery of Supplies (G)

1. On Approximatly 6/24/01 thru 6/27/01 Pliantiff was at the Twin Falls Jail for Court purposes.

2. On /6/27/01 Pliantiff wrote a grievance to Deputy Loza about the nessidy of yelling and yelling over and over while serving the morning meal between 5:00 Am to 5:30 Am.

3. although Submitted the 6/27/01 grievance has not been answered to pliantiff knowlege because pliantiff was sent back to the prison on 6/27/01

4. although Pliantiff has not written any formal grievances He alleges For The purpose of This Claim That morning meals are regulary passed out prior to 6:00 am on a daily basis.

in violation of written Jail policy which states the lights will not be turned on until 6:00 AM. (See Motion To Clarify Comp App. (L)).

Delivery of Supplies (H)

1. Plaintiff states that while at Court for Criminal charges on 8/21/01 Officer Cook was passing out Razors and slamming bean slots at 4:00 Am in the Morning.

2. On 8/21/01 Plaintiff wrote a grievance however he dated it 9/21/01 by accident. Complaining about this continued policy of passing out Razors at such a early hour. This grievance was never answered as Plaintiff was taken back to the Prison on 8/21/01. (See Supp. Affidavit Leon R. Murray Appendix (E)).

Delivery of Supplies (I).

1. Plaintiff was transfered to the [illegible] Twin Falls County Jail on approximatly 11/10/01 and stayed there until 11/16/01. During this time plaintiff was called on the inter-com and his cell door opened to get indigent supplies at approximatly 12:00 Am.

2. Plaintiff states that due to past treatment and the fact that he was sentenced to (4) yrs fixed (1) year indeterminate for (1) count of assualt on Cpl. Doane, which he alleges started over retaliation for writing a grievance against her and (3) other deputies, for deniel of indigent supplies on 8/5/00, has put a chilling effect on the plaintiffs desire to write further grievances on this issue.

Damages And Injury. For (A) thru (I)

1, Plaintiff as stated has suffered Sleep deprivation, pyscological harm, denial of indigent supplies, Retalitory actions for filing the 8/5/00 grievance, Sprayed with mace, charged with felony assualt charges. Sentenced to (4)yrs fixed (1) year undeterminate, placed in ad seg for approximally (3) months and will be classified to a Higher Classification for at least the Next (4) yrs. will have (10) pts on His Classification at the I.D.O.C, That will Never Come off. (See Appendix (A), (B)).

Defendants

1, The defendants invovled are The City of Twin Falls, Sheriff Wayne Tousley and His designee(s) Captian Wright, Lt. Dahl, Deputies Cpl. Doane, Dee, Virgil, Callin, Cook, Hartley, Conger, Loza + Probaso.

Relief Requested for (A) thru (E).

1. Plantiff requests award of nomunal Damages of (1) dollar, Monetary Damages for Sleep deprivation, pshcological Harm, to be determined by the Jury, Punitive Damages to deter the defendants from Violating Clearly established Law i.e. Wilson v Sieter, Keenan v Hall, and Lewis v Lane, Supra citations omitted.

2. Plantiff requests injuctive relief that orders Defendants to stop delivering Supplies after 10:pm to 6: Am. This includes but not limited to Legal Mail, personal Mail, Cleaning Supplies, indigent Supplies, Razors, Medication, Toilet paper, Clothing and meals.

3. Plantiff does have postConviction options on His Burglary and Assualt Charges in Which He would be placed Back in The T.F.C.I. in The Future.

## Denial/Delay of Medicial Care for Wrist
## Claim III

Plaintiff Claims that denial and delay of a prescribed Medicial Plan by the nurse Lou Probasco is in violation of the Eighth Amendment.

## STATEMENT OF FACTS

1. On June 6, 2000 Plaintiff was injuried in His Wrist and Thumb area when guards put The Handcuffs on Him, and left Him in The excersize cages at The Idaho Maximum Security Institution for approx-imatly (2 ½) hours to (3) hours,

2. On June 6, 2000 Plaintiff Put in a inmate Concern to IMSI Unit Sargent Explaning his injury and the Fact That His wrist and Thumb have been numb for (9) hours Since Rec. The Sargent Answered "Let Me know what Medicial says!" (See Appendix (M-4))

3. On 6/8/00 Plantiff recieved a response to his Medicial Request Concerning his wrist injury. The Response stated in part " Also you Complianed about numbness In your Thumb This is a common problem When Cuffs are invovled. This should go away in a Couple of Weeks, If not please rekite and let Medicial know!" See Appendix (M-5)

4. Also on 6/8/00 a Medicial memo was issued for one year by L. Nichslson CRNP for Medicial Cuffs due to the injury. See Appendix (M-6)

5. To Plaintiffs recollection he was Seen by Medicial personell at IMSI for the wrist injury after the (2) week period expired because His wrist was still numb and painful. He was prescribed Tylenol as needed

and told to put in to see a doctor in (2) two weeks if the numb-ness and pain continued.

6. On or shortly after 7/26/00 plaintiff was transfered to the Twin Falls County Jail, and seen by Nurse Lori Probasco on intake. Plaintiff had a card of Tylenol prescribed as needed that he brought from the prison however this was taken from him on intake, No doctor was Shedu

7. When Plaintiff recieved his medication Tylenol the following day he asked the officer how many times he would receive Tylenol and he was told (2) one time a day. Plaintiff requested at that time to the medicial because the (2) week period had expired from his visit with medicial at the prison and his thumb and wrist were still numb and painful. Also Lori Probasco was

Attempting to Lower his prescriped Tylenol Medication which He was Taking approximatly (2) to (3) Times daily or as needed.

8. On or about 8/1/00 plaintiff was Taken to See Defendant Lou Probasco, and He requested to see The doctor as planned by The Prison Medicial Dept. because The (2) weeks were up, Plaintiff explained This to Probasco and without even examing his Wrist or Thumb Probasco Stated to Plaintiff He Would have to Wait to See The doctor when He Went back to The Prison.

9. Plaintiff states That He became angry, and upset because He has had a history with trying to get Medicial treatment in The Past with Probasco mostly related to His Stress, anxiety, ~~Cause~~ sleep deprevation caused by

The 24 hour Lighting, Pliantiff states without getting to address His other Medicial issues i.e. (Stress, Anxiety Sleep depruvation) He was Told To leave The Medicial And escorted back to His Unit by a Jail Deputy.

10. To Pliantiffs knowlege Probasco did not Schedule Him to See The doctor or did He change His Medication of Tylenol To more Than (2), one Time a day after This VISIT. (See Motion to Clairity Comp. App. (A), (B)).

11. Pliantiff states He Compliained to a Deputy Rivera about His Wrist injury, ~~Sleep~~ Sleep depruvation, Anxiety, Stress on 8/1/00 And explianed to him What Happened at His visit with Probasco. Pliantiff told Rivera That (2) Tylenol (1) Time a day Was not enough and That He was Supposed to See The doctor per The prison Medicial Dept.

12. Plaintiff also explained to Deputy Rivera That He was suffering sleep deprivation, anxiety and stress due to the 24 hour lighting, He asked Rivera IF He would personally talk to Probasco about the wrist injury, sleep deprivation, anxiety stress issues and His wish to see the doctor. Rivera said He would.

13. On or about 8/3/00 Plaintiffs Tylenol medication was changed to (2) Tylenol (3) Times per day by Probasco. However to His knowlege He was not scheduled to see The doctor about His wrist injury or The sleep deprivation, anxiety, stress issues. (See Motion to Clarify Comp. App. (C))

14. ON 8/5/00 PlaintiFF attempted to file a grievance on not seeing or being Shceduled for the doctor for His wrist Injury and the sleep deprivation issue,

His stress and anxiety. Although Cpl. Dennis remembers picking up this particular grievance and placing it in the basket, It was never answered.

15. Plaintiff appealed these issues on 8/8/00 asked for the 8/5/00 initial concern to be returned to him as it was evidence in the criminal charges filed against him., On 8/10/00 defendant Lt Dahl answered " MR MURRAY - I don't see that you have a valid grievance on a one time incident ". The initial grievance was never returned to this day. (See initial Comp App. (B)).

16. Plaintiff states that He did continue to ask deputies on almost a daily basis that He needed to see the doctor for His wrist as it was still numb and inflammed and He was also

Still Suffering Sleep deprivation Anxiety, Stress, and all This was Causing Him Mental health problems,

17. On 8/15/00 Plaintiff put in a grievance Explaining in part " I Have put into Medicial For Sleeping Medication and This has been denied as The Doctor won't See me, I Also Asked to See Mental Health and This Has not been done Either", Defendant Capt. Wright Answered The grievance on 8-16-00, but did not address The Medicial Issues [illegible] (initial Comp, Supp App. (D-1)).

On 8/16/00 Plaintiff was Seen by [illegible]. Slickers for His wrist injury and [illegible]und That it was inflamed and [illegible]at Plaintiff was having Pain. Dr. [illegible]ickers prescribed The Medication VIOXX [illegible]ch Plaintiff was not Taking until Then.

19. Plaintiff states that He has had to have continued care about His wrist injury. On 1/27/01 He was seen by the prison pyshicians assistant. (See Appendix (M-7)).

20. On 3/11/01 "After discussion with Security and Dr. Hill, We Have decided not to give you a wrist brace at This Time!" (See Appendix (M-8)).

Damages / injury

1. Plaintiff states his damages and injury are That His Plan for Medicial Care was interupted. He Suffered from inflamation/ His wrist for approximotly (2) weeks from 8/11/00 thru 8/16/00 that was unessary. He also Suffered Emotional and phycologicial anguish by not being treated as planned.

2. Plaintiff may also Have suffered un-know injury by not recieving The inflamation medication during That Time period. As His wrist is still numb & painful to This date.

Defendants

1. Plaintiff belives that Probasco is responcible for interupting the planned Medical Care of Plaintiff. However Lt. Dahl also denied Plaintiffs grievance Concering His Medicial grievance filed 8/5/00. Dr Slickers May Have also been Told by Probasco, but ignored the request to See Him. This is Unknown To The Plaintiff at This Time.

Exustion of admistrative Remidies

1. Plaintiff attempted to file a grievance on The wrist injury on 8/5/00. This was denied by Lt Dahl on 8/8/00. Plantiff also wrote a grievance on 8/15/00

because He Was not being Seen by the doctor. This was answered by Capt. Wright on 8/16/00.

Remedy / Relief Requested.

1. Plaintiff request nominal damages of 1 dollar. Also Monetary damages for pain and Suffering and Psychological Harm to be determined by the Jury. Plaintiff request Punitive damages to deter defendants from doing this in the future and Violating Clearly Established LAW. WATSON V CATON, 984 F.2d 537, 540 (1st Cir 1993) (Per Curiam) (deliberate indifference because prison nurse refused to treat inmates Serious Medical need concerning HAND injury on NON MEDICAL ground that state was not responsible for injuries caused by events prior to incarceration) Also See, BOZETTI V WISCOMB 930 F.2d 1150, 1154-55 (6th Cir 1991) (deliberate indifference because Nurse INTER-

-Rupted prescribed medicial plan, despite Fact That prisoners wound healed completely). BALLA v Idaho St. Board OF Corr. 595 F.Supp. At 1577 (deficiencies at screening on intake by nurse condemned) Hamilton v Endell, 981 F.2d 1063-1066-67 (9th Cir 1992) (deliberatl indifferance found when denied Medicial care on Non Medicial grounds).

2. Plantiff requests injuctive relief that Orders defendants to not interrupt in His Current Medicial plans in the future.

CLIAM IV

Denial of Medicial Treatment for Sleep Depreviation, Anxiety or Stress.

Plantiff alleges That denial of Medicial Treatment for Sleep deprivation, Anxiety and Stress violate The Eigth Amend.

## Background Facts

1. Plaintiff States that when arrested on Sept. 22, 1997 He was suffering from Heroin dependancy and anxiety, probable organic personality Disorder, Post Traumatic Stress Disorder. (See Motion to Clarify Comp. App. (D) pg (3)).

2. On Sept 22, 1997 when arrested and placed in The Twin Falls County Jail Plaintiff was taking Various Medications for withdrawl from Heroin dependancy which included Clonidine, and TRAZodone. These Medications were continued by The doctors at The Jail which was a Continued plan from The V.A. Hospital in SLC, Utah.

3. Plaintiff States That once He completed His withdrawl from Heroin He was Continued on The Medication "Trazadone" due To His ANXIETY, Stress, and problems with sleeping-due to His Underlying psycological problems.

4. Plaintiff states that when he was transfered to the State prison on 6/5/01 He no longer took the Medication while at the prison because they don't keep the lights on (24) hours a day (7) day a week in the cell there isn't the constant noise or waking up inmates in the middle of the Night and Morning to pass out supplies. ~~usually in the morning~~

5. Plaintiff was Transfered back to the Jail on 10/28/1999 Thru 12/3/1999 for post conviction Court Matters. Once again Plaintiff Had to seek Medicial Care due To the Conditions of Confinment (24) hr lighting policy. He was placed on the Medication "Trazodone" during that Time period by Defendant Slickers.

## STATEMENT OF FACTS

1. On 7/26/00 Plaintiff was Transfered from The prison to The Twin Falls County Jail for post conviction Court Matters. At

that time plaintiff was not taking any medications except for Tylenol as needed for a wrist injury that occured at the prison. (See Motion to Clarify Comp. App. (A)).

2. On or about 8/11/00 plaintiff was taken to see defendant Probasco concering a wrist injury. Plaintiff does not recollect if He in Fact asked The Deputy Filling out The Form requesting The 8/11/00 visit about His request For Medicial Attention Concerning His Stress, Anxiety and Sleep Deprevation, but He believes He did At That Time.

3. On 8/11/00 when Plaintiff seen defendant Probasco about His Medicial issues a arguement occured because His request To See The doctor about His wrist injury was denied. He was Told To wait until He went back to The Prison to see The doctor. Plaintiff was unable

to explain His problems with stress, sleep deprivation and anxiety, at that time, because He was ordered to leave the medical by Probasco.

4. On or about 8/11/00 Plaintiff made a specific request to Deputy Rivera to put in for medical about His sleep deprivation, anxiety and stress. Plaintiff distinctly remembers explaining to Deputy Rivera His issues about not being able to sleep, His anger and stress that the jail environment was causing Him. Plaintiff explained to Deputy Riveia His previous meeting with defendant Probasco and the fact that it ended in a arguement.

5. Deputy Riveia stated to Plaintiff that He would personally talk to Probasco about getting more Tylenol for His wrist injury and His request to see the doctor about His wrist injury and about

His issues of not being able to sleep, anxiety, stress. His request for the Medication "TRAZadone" which He had been given in The past.

6. Plaintiff does not know what deputy Rivera told Probasco, because He was not Taken to see Probasco about This request. Plaintiff Does distinctly remember Deputy Rivera telling Him That He communicated all His Complaints to Probasco.

7. On Or about 8/3/00 Plaintiff was given a prescribtion for Tylenol 3 x 5 per day, but He was not given any "TRAZadone" As Requested. Or was He scheduled to see Dr. Slickers to His knowlege. When Plaintiff questioned Deputy Rivera about This Deputy Rivera Responded "I told Him what you wanted" or words to That effect. (See Motion to Clarify Comp App. (C)).

8. On 8/5/00 Plaintiff attempted to file a grievance about not being scheduled to see the doctor about his wrist injury, his stress, anxiety and sleep deprivation, also about being woken up (2) times on the 8/4/00 and 8/5/00 at 1:00 am in the morning and the (24) hour lighting.

9. A Cpl. Dennis remembers picking up this grievance and placing it in the basket on 8/5/00, as he personally told Plaintiff this at a later date when he was trying to locate it. This 8/5/00 grievance was never answered or placed in the Plaintiff's file.

10. On 8/8/00 Plaintiff wrote a appeal to the 8/5/00 ~~[illegible]~~ grievance that it was never answered. On 8/10/00 defendant Dahl answered " Mr Murray - I don't see you have a valid grievance on a one time incident - (See Initial Comp. App. (B)).

11. Plaintiff States that on 8/6/00 Due to The Denial of Medicial Treat-ment for His Organic Personality Disorder, Sleep deprivation, Anxiety, And Post Traumatic Stress disorder, He went into a "Rage Attack" after a out of State visit was Terminated.

12. Plaintiff States That His "Rage attack" was caused by Denial of Medicial Treatment. In Conjuction with a Totality of His Conditions of Confinement which includes but Not Limited to, The (24) hour lighting, scheduling practices for delivery of Supplies, Medication, Meals, which cause constant Noise and being woken up in The early Morning hours, verbal abuse, and denial of Extended Time to Visit with his Out of state Visitors. The Testimony of This Rage Attack is outlined in a prelimary Transcript. (See Affidavit of Leon R. Murray App. (D)).

13. On 8/6/00 Plaintiff states that He was questioning by defendant Callin of what was wrong and why He was So Angry and Stressed out over the intercom while plaintiff was in His Cell. Plaintiff at that Time told Him That He was denied Seeing The doctor by Probasco. Or The doctor would Not See Him concerning His physiological problems, sleep depravation, Stress and Anxiety. Defendant Callin Promised He would talk to Probasco that Day.

14. On 8/6/00 plaintiff was placed in administrative segregation and was not Seen by the Nurse or the doctor that day. or was He scheduled to See The doctor by Probasco to His Knowlege or belief.

15. Plaintiff States That He Made numerous requests to See Arobasco, and The doctor to several deputies. When They came to deliver His Tylenol Medications during The periods from 8/6/00 to 8/15/00. He was not Seen or scheduled to See the doctor to His knowledge or belief.

16. On 8/15/00 Plaintiff wrote a 3rd grievance about not being Seen by By The Doctor for Sleeping Medication or being Seen by Mental Health. On 8/16/00 Capt. Wright Answered The grievance stating "I have Checked This out and Meds were being Passed out This Time. Sorry"). (See initial Compliant Supp. App. (D-1))

17. On 8/16/00 Plaintiff was taken to see Dr. Slickers in which He was prescribed Medications for Sleep and HyperTension / High Blood Pressure, and for inflammation of Plaintiffs Wrist. (See initial Comp. [illegible] Supp. App. (D) 8/17/00 Medical Reciept For Toprol, Trazadone, Vioxx).

Damages / Injury Suffered

1. Plaintiff states That He suffered from anxiety, stress, and sleep deprivation and pheological Harm from 7/26/00 to 8/16/00.

2. Plaintiff states that due to his un-treated mental condition and Lack of Medication in This Enviorment, He went into a "Rage Attack" And was surrounded

and Sprayed with chemical agents due to His Mental Condiction by (4) Jail Deputies (See Dr. Beavers Report dated 6/15/01 Motion to Clarify Comp. App. (I) pg(17)(b)).

3. Due to The denial of Medical Treatment for Plaintiff sleep Deprivation, Anxiety, Stress and Mental Condiction He was accussed of Assualting/Battery Jail Deputies. He was Convicted of (1) Count of Assualt/Battery on Cpl. Doane in spite of his Mental Condiction and non-Treatment Thereof.

4. Plaintiff States that but for The Deniel of Medicial Attention it is very Un-Likely That He would Have Went into a Rage attack and been Charged with Assualting A Jail Deputy Cpl. Doane.

5. Plaintiff was Sentenced to (4) yrs Fixed (1) year indeterment due to His Untreated Mental Condiction. (See Appendix (A) (B)).

6. Because pliantiff allready suffers from Post Traumatic Stress disorder from previous abuse as a child, in Reform School, The U.S. Navy the incidents that occured on 8/6/00 will surely add to his already existing and future Problems, with His Mental Health. Helling v McKinney 509 U.S. 25 (1993) (Eighth Amendment protection against deliberate indifference to prison Health problems extends to conditions That threaten to cause health problems in future, as well as current serious health problems).

Defendants

1. Pliantiff states that the defendants directly involved are Deputy Rivera if he did not communicate Pliantiffs Medicial request for sleep deprivation, ANXIETY, stress to Nurse Probasco on or about 8/1/00.

2. Defendant Lou Probasco is responcible if He was Told By deputy Rivera and He Failed to Communicate Plaintiffs Medicial requests to See Dr. Slickers.

3. Defendant Dr. Slickers is responsible if He in Fact Was Told by defendant Probasco and did not act on That request.

Exaustion of Admistrative remedies

1. Plaintiff wrote a grievance on 8/5/00 ~~that~~ Concerning His deniel of Medicial attention or to See the doctor Concerning Sleep deprivation, ANXIETY, Stress, This grievance was Never answered.

2. On 8/8/00 Plaintiff wrote (2) grievances, One grievance was asking for a Answer and return of The 8/5/00 grievance Concerning The deniel of Medicial Care, The Second grievance was about a request for a investigation Concerning The incident of 8/6/00. both Were denied by Lt. Dahl. (See initial Comp. supp. App. (B)).

3. On 8/15/00 Plaintiff wrote a grievance about the continued denial of medical treatment and sleep medication and to see mental health. On 8/16/00 Cpt. Wright answered stating only that medications were being passed out at 12.45 am that he was sorry. (See initial comp. Supp App. (D-1)).

4. Defendants Callin, Lt. Dahl, and Capt Wright are possible defendants on this claim also.

Remedy / Relief

1. Plaintiff seeks nominal damages of (1) dollar. ~~Monetary~~ damages for pain, suffering, sleep deprivation, anxiety, stress, denial of medical care, and future medicial care to be determined by the jury. Plaintiff is further seeking punitive damages to deter and punish these actions in the future

2. Plaintiff is also asking for a finding of fact and conclusion of law from the court stating that denial of medicial care by the defendants contributed to Plaintiffs actions on 8/6/00 and the assualt on Cpl. Doane and

Violated plaintiffs 8th Amend Rights.
Adequate Medical Care.

CLIAM V

Denial of Indigent Supplies

1. On or about the early Morning of 8/4/00 or 8/5/00 At Approximatly between the Hours of 12:00 AM to 1:00 AM plaintiffs Cell door was open and He was told to Come up to the Booking Area to get His Indigent Supplies.

2. Indigent Supplies consist of personal writing paper, Free Personal Envolopes to write personal letters, Soap and Tooth-paste And Toothbrush for personal Hygien, And pencils on a exchange basis,

3. Due to the early Morning hour and the Fact That plaintiff would have to get fully dressed and walk up to Booking area.

He did not go and get His indigent Supplies. Plaintiff did need paper, Envelopes, Soap, toothpaste and pencil. He may Have also needed to exchange His toothe Brush because They only last a week generaly because They are cheap and The Brustles go soft easly.

3. Plaintiff Distinctly Remembers asking Cpl. Doane, Callin, Hartly and Conger for His Indigent Supplies The Following day. They all said They would look into it, but The Supplies were Ultimatly denied by these officers.

EXAUSTION OF ADMISTRATIVE REMEDIES

1. On August 5, 00 Plaintiff attempted to file a grievance on Cpl. Doane, Callin, Hartly, Conger, and The Policy of Passing out indigent supplies at The early Morning hours.

2. To Plaintiffs knowledge Cpl. Dennis picked up This 8/5/00 grievance And placed it in The basket. To Plaintiffs understanding This grievance would be directed to Cpl. Doane because she was The Ranking officer Named in The grievance

3. On 8/6/00 Plaintiff was Surrounded by all Those Named in The 8/5/00 grievance after He Had a "Rage Attack" brought on By His Mental Condition and Lack of Medical Care, Conditions of Confinement, Also What He Felt was Retaliation by Cpl. Doane in denying a Extended visit from out of State For writing The 8/5/00 grievance against Her. Plaintiff was Sprayed with Chemical Agents And placed in AdMistrative Segregation.

4. On 8/8/00 Plaintiff wrote (2) grievances The first was a request for The Return of The 8/5/00 grievance Against Cpl. Doane Cullin Hartly And Conger. This was denied on 8/10/00 By Lt Dahl. Stating "MR Murray I don't see you Have a Valid grievance on A one Time incident"!

5. The Second grievance was filed on 8/8/00 (Noting The 8/5/00 and The indigent Supply issue grievance). Plaintiff requested a investigation into The Events That occured on 8/6/00. On 8/10/00 Lt Dahl Answered - MR Murray Your Version of The Event And Its cHronology are Quite Reversed From who Started The Confrontation"! (See Both 8/8/00 grievances Initial Compl. & Supp. App. (B)).

6. The 8/5/00 grievance was Never Answered or Returned to Plaintiff.

Damages Suffered

1. Plaintiff was denied material evidence in His Criminal, and This Civil Case by not relaying The 8/5/00 grievance on defendants Doane, Callin, Hastly, Conger. The Denial Of Medical Care, The 24 hour Lighting Policy, And The Policy of Passing out indigent supplies in The early Morning hours.

2. Plaintiff was denied His indigent Supplies for one week.

3. Plaintiff was retaliated against for filing the 8/5/00 grievance by Cpl. Doane, Callin, Hartley, Conger on 8/6/00

4. Plaintiff was Sprayed with Mace by Defendant Conger and Placed in Ad-Seg which Caused psycological Harm to plaintiff Then and in The future.

Remedy/Relief

1. Plaintiff Seeks nominal damages, Monetary damages, and punitive damages to be detained By The Jury.

2. Plaintiff seeks injunctive Relief to Order defendants to discontinue the practice of denying inmates indigent supplies because They are unwilling to get up at 12:30 to 1:00 Am IN the Morning, get dressed and go to the booking area. because it is unreasonable and not Related to a legitimate penal interest in Violation of Clearly Established Law. Thornburgh V Abbott, 490 U.S. 401, (1989); Turner V Safley 482 U.S. 78 (1986) Cooper V Sherriff 929 F.2d 1756-764-65 (8th Amend claim stated For denial of Food For not dres

3. Plaintiff does expect to return to The Twin Falls County Jail for Postconviction Matters. He also Has a History in TwinFalls dating back to 1986.

# CLAIM VI

Cliams Regarding visitation

Plaintiff states that He as an out of state prisoner was treated differently from other out of state visitors according to twin Falls County Jail Policy in violation of The equal protection clause of The 14th U.S. AMEND.

## STATEMENT OF FACTS

1. Plaintiff states that the defendants have a out of state Policy, Practice, Custom for Special Visits Longer Than (20) minutes for out of state prisoners and their Families,

2. That between 10/28/99 and 12/03/99 Plaintiff recieved a Special visit with His brother Johnny Murray for a period of one (1) hour or more. When He came to visit Him From Utah. This was not in writting and Cleared by Jail personell Spontaneously.

3. This was more than the (20) minute visit

~~unreadable~~, Allowed For Regular Visitors.

4. Plaintiff states that on or about 7/30/00 His Sister in Law Jenell Murray made arrangements for a (General) Special out of State visit for 8/6/00. Which was approved by Sgt. Fowler For The Plaintiff.

5. To Plaintiffs knowlege This Special visit was approved For plaintiffs General Family Members for a period of (2) hours.

6. Plaintiff states That Jennell Murray his Sister in Law also spoke with Cpl. Dennis prior to The 8/6/00 visit to verify that it was okay.

7. Plaintiff states That other out of state prisoners ~~Have~~ are allowed and Have recieved Similiar Visits to His knowlege and Belief under This Policy.

8. On 8/6/00 When Plaintiffs sister Tresa Gonzales Came to Visit and Showed

out of State I.D. That visit was denied after (20) minutes by Cpl. Doane. in Light of The approval and policy.

9. Pliantiff states that His sister in Law Jennell Murray and His Brother John murray were the ones who invited His sister Tresa Gonzales to Come from Utah to visit with Him. To His Knowlege and belief This was approved under The General terms of The visit, ~~[illegible]~~ and The policy.

10. Pliantiff states That it is inmaterial That His sister in Law Jennell Murray And His Brother John Murray did not Show up on 8/6/00 for The visit, because The visit was Approved For pliantiff and His Family Members (in which Tresa Gonzales is His Natural Full Blooded sister) to His knowlege And Belief.

EXUASTION OF ADMISTRATIVE REMEDIES.

1. On 8/8/00 Plaintiff filed a grievance Concerning the Termination of His out of State visit after (20) minutes. Although Plaintiff did allege it was Retaliation by Cpl. Doane, because Plaintiff filed a grievance against Her on 8/5/00. Plaintiff did ASK in The grievance For an investigation into why His visit was Terminated. (See Initial Comp. Supp App (B)).

2. On 8/10/00 Lt. Dahl answered the 8/8/00 grievance without Talking to Plaintiff or His Sister in Law ~~[illegible]~~ Murray, Sgt Fowler, or Cpl. Dennis To His Knowledge or Belief. Lt. Dahl only stated "MR Murray Your version of The Events And it Chronology are Quite Reversed From who started The Confrontation (See INITIAL Comp. Supp. App (B)).

3. Plaintiff states that exactly (10) days after the 8/6/00 visit on 8/16/00 A New Revised "Letter to The Detention Staff" was approved. This New Form Has A Box for Special visits. (See Affidavit of Leon Murray Appenix (C)).

4. The Prior "Letter to Detention Staff" before 8/16/00 do Not Have a box for a Special visit. Plaintiff States That to His Knowlege He did not Have to Have Approval "IN writting" For a Special visit on 8/6/00, according to the form on Visiting policy.

5. On 8/13/01 Plaintiff wrote a "Letter to detention staff" requesting infor-mation about a Special visit and

the policy. Plaintiff Asked "I would Like to know what Criteria for a Special out of State visit is? Also How Long would the visit be For my Family From Utah? How Many Visitors allowed for This one Time visit? Is There a Policy for This?

6. On 8/14/01 Sgt. Hughes Answered - "Mr Murray Just Let Me Know when You want Your Family to visit. How much Time are You Requiring? How Many are comming? YES. (See Affidavit of Leon Murray Appendix (I))

7. Plaintiff States That His Sister in Law Jennell Murray did Make arrangements in which She told Sgt Fowler when she wanted The visit, How Much Time She wanted, And How Many were Comming. It was Not Person Specific visit per se.

Defendants

1. Plaintiff states That Sgt. Fowler would be a defendant on This issue because He was The actual person who authorized The Special visit verbally To Jenell Murray Plaintiffs Sister-in-Law. However Due To His Actions or NON Actions Plaintiffs Special visit was denied.

2. Plaintiff States Lt. Dahl also was Made aware of the deniel of Plaintiffs Special Visit on 8/8/00, In which Plaintiff asked for an investigation INto The Matter and Lt. Dahl did not act. Therefore condoning the deniel of equal treatment for special visits.

3. Plaintiff states He did file a grievance agianst Cpl. Doane On 8/5/00 Prior to the Visit and She was The one Who actually denied The Special visit denieing equal Treatment and possible retaliation.

Damages / IN Jury

1. Pliantiff suffered pychologecial and Emotional Harm when His Special visit was Terminated as a Regular Visit of (20) minutes.

2. Pliantiff became so upset due to His underlying pycholosecial 'illness(s) That He went into a uncontrollable "Rage ATTACK" after His VISIT was arbitrarly Terminated.

3. IN Response to Pliantiffs Mental Condition And outburst, He was Surrounded And Sprayed with Mace And placed in Adminstrative Segregation. Which Caused Him physicial And Mental Anguish; And Possible pycolosecial Harm in The future.

Remedy/Relief

1. Pliantiff requests nominal damages of (1) dollar. Monentary damages for Pain and Suffering and pysclologicial Harm to be determined by the Jury. Pliantiff further Seeks Punitive damages for Violating Established Law That "all persons similarly circumstanced Shall be treated alike" F.S. Royster Guano Co. V Virginia, 253 U.S. 412, 415 (1920).

CLIAM VII

1. Cliams Regarding Pliantiffs Attack

2. Other Allegations Regarding Conviction for Attacks.

STATEMEN OF FACTS

1. ON November 19, 2001 the Court ruled That Pliantiff cannot bring His issues outlined at pages 13, 14, 15 of The order

unless He Could Show that His Convictions for these offenses against these officers have been invalidated.

2. Plaintiff States that ON 11/14/01 He was Convicted of one (1) Count of Assualt/Battery on defendant Doane And Sentenced to (4) yrs Fixed (1) yr. indeterminate Running Consecutive to His Current Sentence. (See Appendix (A),(B)).

3. Pliantiff States That The Assualt/Battery Charges against Him For defendants Callin and Hartley were dismissed. Pliantiff was never charged with any offense against defendant Conger the officer who actually Sprayed Plaintiff with mace on 8/6/00. (See Appendix (A),(B)).

4. Pliantiff was never charged with any offense against defendant Schroder.

# CLAIM VIII.

## DENIAL OF MENTAL HEALTH TREATMENT AFTER ATTACKS

Plaintiff states that He was denied Mental Health Treatment after The attacks upon Him ON 8/6/00. Plaintiff further states That His Current Mental Health Plan was denied And unterrupted both in Violation to His Fourtheeth/ Eighth Amendment Rights.

## STATEMENT OF FACTS

1. ON 8/6/00 After Several Compliants about His Treatment, Condictions of Confinment, 24 hour Lighting Policy and denial of a Special out of State Visit with His Family. Plaintiff Went unto a Rage Attack due to His exsisting and Underlying pschological problems of, Organic Personality Sydrom, BI-Polar affective disorder, CHronic ~~[illegible]~~ PostTRAMdict Stress Disorder EXABBERATED by Sleep depriuation And (24) hour Lighting, and Verbal abuse.

2. AS a result of His Mental Condition and "Rage Attack" plaintiff was aggresively Surrounded by defendants Cpl. Doane, Callin Hartly and Conger. He was eventualy Sprayed with Mace And Locked in His cell.

3. Plaintiff states That defendant Callin questioned Him over The intercom in His cell as to why He was So upset, Angry and Emotional. Plaintiff explained to defendant Callin That He was expriencing alot of stress, Anixety, and pschologicial problems. That He was Having a Hard Time Sleeping due to This and The (24) hour lighting, plus being woken up all The Time.

4. Plaintiff told Callin That He Had requested To See The Medicial. He Requested Deputy Rivera to TAlK to Medicial about These problems. That He wrote a grievance on 8/5/00, And Still Nothing was being done about His Medicial Problems. That He Couldn't Handle it anymore.

5. To Pliantiffs Recollection Callen promised Him He would also talk to Medicial about pliantiffs Mental Health issues. However Nothing was done that day.

6. Pliantiff was Placed in Administrative Segreagation for ~~his~~ Treatment of His Mental Condiction. ~~and~~ Although He personaly asked defendant probasco to See A Mental Health Specilist Probasco Told Him He Had to get permission from His attorney. Pliantiff distictly Remembers Telling Probasco He didnit Care what His attorney said He wanted to See Mental Health.

7. Pliantiff States that He did talk to His Attorney Roger Harris about This. To His Recollection Roger Harris told Him it was His Choice and He didnit need His permission for somthing like That. Pliantiff did relay This Message to Probasco Yet ~~He~~ He was Not Seen by Mental Health Specialist.

8. Pliantiff states that the Symptoms He was Suffering That put The defendants on Notice and alert that He was Having Serious Medicial problems which required immediate Medicial Care are As Follows;

1. Pliantiffs outburst of Anger on His 8/1/00 Medicial visit with defendant Probasco in which was Terminated prematurely.

2. Pliantiffs Follow up Request ON 8/1/00 to Deputy Rivera Compliang of sleeping problems anger, Anxiety, stress in which Rivera Alleges He Communicated to Probasco.

3. Plantiffs Compliants to Hugo Myers The Valunteer Chaplin about sleeping problems, stress, Anxiety and deniel of Medicial Care. on 8R about 8/5/00. Request for spiritual guidance.

4. Pliantiffs Compliant to Deputy Conger about Sleep problems, Anxiety, stress, on or about 8/5/00. In which Conger gave inmate Kyle Wynnia His own organic Medication for Migrain Headaches

,and said He would talk to Medicial about pliantiffs problems.

5. Pliantiffs grievance Filed on 8/5/00 Requesting Help to file a Law suit on the conditions of His Confinement and deniel of Medicial Care.

6. Pliantiffs grievance Against Cpl. Doane, Callen Conger, Hartley in which He also compliained about sleep problems, 24 hour lighting and deniel of Medicial Care.

7. On 8/6/00 Pliantiff Had a "Rage attack" due to His Mental Condiction in which He was sprayed with Mace. He Told defendant Callen He was Having pschiological problems and Needed to See Mental Health.

8. Pliantiff requested to See Mental Health after He was placed into Ad-Seg because of His Mental Condiction And Violent Behavior. To defendant Probasco.

9. Pliantiff filed another grievance on 8/15/00 Complianing of Sleepdeprivation, deniel to See ~~Dr.~~ Dr. Slickers and A Mental Health Specilist. ~~This~~ (See initial Compliant Supp. App D-1).

10. ON/8/16/00 Pliantiff was seen by Dr. Slickers, and prescribed ~~by~~ Sleeping Medication "Trazadone". Pliantiff Requested To See a Mental Health Specilist to Dr. Slickers and Probasco at That Meeting. Pliantiff told Slickers And Probasco His attorney Roger Harris told Him This was His Choice. His request was never acted upon by Dr. Slickers.

EXHASTION OF ADMISTRATIVE REMEDIES

1. Pliantiff Filed a grievance on deniel of Medical Care or to See The doctor ON 8/5/00. This grievance was never answered, or Returned.

2. Pliantiff filed a 2nd grievance on Sleepdeprivation and deniel to See a doctor and a Mental Health Specilist ON 8/15/00. (See initial Comp. supp. App D-1)

[illegible]

## Defendants

1. Plaintiff states that Deputy Callen was indifferent for not scheduling or requesting medical attention for Plaintiff on 8/6/00 for His Mental Health needs.

2. Plaintiff states that Nurse Lou Probasco was indifferent for not scheduling or requesting Medical and Mental Health care for Plaintiff based on NON MEDICIAL Reasons i.e., because He needed permission from His Lawyer. Also Even after Plaintiff Talked to His Lawyer and Told it was His choice. Probasco still Failed To request or schedule Mental Health Care Specialist.

3. Plaintiff states that Doctor Slickers was indifferent for not scheduling a visit with a mental Health Speclist after Plaintiff requested it on 8/16/00 during His Visit.

4. Plaintiff states That Capt. Wright was indifferent in not scheduling or requesting a Mental Health Specialist when He Answered Plaintiff 8/15/00 Grievance requesting a Mental Health visit.

Subpart (B) -

Denial of Mental Health Treatment and Interruption of Mental Health Care Plan

1. Plaintiff states that He was returned to the Prison on or about 8/31/00 from the Twin Falls County Jail without seeing a Mental Health Specilist.

2. Plaintiff states that due to a Policy, Practice and Custom at the Idaho Maximum Security Institution, In which He was placed in a cell with Metal window covers on the cell door, These window covers would be opened and Closed Numerous amount of Times Day and Night and Cause Constant Noise. This is under Lidigation in Murray v Spalding Case No. CV OC 000 3583*D (4th Judicial District Idaho)

3. This Constant Noise Caused similiar Exacerbated pschologiccal problems similiar to that at The Twin Falls County Jail. Plaintiff put into See the Mental Health for these Related problems and Mental Health issues.

4. On 4/16/01 Chad Sombe PH.D. Sent Plaintiff Information on Sleep Hygiene (See Motion To Clarify Comp. App. (F).

5. On 4/30/01 Chad Sombe PHD. Made a Assement That a Dr. ~~[illegible]~~ Khatian Made a provisional Diagnosis of Rule out BI-polar disorder (See Motion to Clarify Comp. App. (G)).

6. On or before 5/8/01 a Mental Health Plan was made For Plaintiff with Dr. Khatian. In which He would be given 500 mgrs of Tegretol daily. Plaintiff was given a inFormed Consent Form to Sign on that day. As Part of The Form, it Clearly Stated in paragraph #6. "Abrupt or Sudden discontinuation OF This Medication May Cause Seizures" (See Motion to Clarify Comp App. (H)

7. Plaintiff states that during this Plan in approximatly June of 2001 He was seen

by Dr. Khatian, and His Medication Tegretol Was Specificialy Changed to (500) mg (1) X'S Daily At Night Time instead of (600) mg in The Morning (300) mgs At Night because of The discomfort And Side effects of the Medication was Having on Him.

8. On 6/15/01 A Report was Made By Dr. Beaver a Mental Health Specialist who was Specificialy seen due to The incident on 8/6/00. Dr. Beaver Concurred in Dr. Kathians use of Tegretol For plaintiffs phycologicial problems: (See Motion to Clarify Comp. App. (I)).

9. On 6/24/01 thru 6/27/01 Pliantiff was Transfered to The Twin Falls County Jail for Court, He did not receive any Tegratol during This period although He requested it to Medicial And defendant Probasco And Slicker.

10. On 8/12/01 thru approximatly 8/21/01 Pliantiff was being Held in the Twin Falls County Jail. During This period of Time pliantiff was only given 100 mg 3 X'S A day of Tegratol. None of these were at Night Time prior to Sleep. as previously planned by Dr. Kathian and pliantiff.

11. Pliantiff states that He was Never seen or talked to by Probasco or Slickers on 6/24/01 thru 6/27/01 or 8/12/01 thru 8/21/01 although He requested.

Exuastion of Admistrative Remendies

1. Pliantiff Put in a grievance on 6/26/01 due to denial of His Medication tegratol and His Mental Health Plan. (See Motion to Cliarify Comp. App(K)).

2. This 6/26/01 grievance was never answered, because plantiff was taken back to The Prison on 6/27/01.

3. On 8/12/01 Plaintiff put in a grievance about denial of His Medication and Sleep problems. On 8/13/01 Sgt Byers Answered "See Medicial about your Medication and The Lights stay on". (See affidavit of Leon R. Murray Appendix (G)).

4. On 8/13/01 Plaintiff wrote a grievance because His dosage of Medication was Changed and scheduled at different Times then His Current Mental Health Plan. This was done without Seeing any Medicial personal at the Jail.

5. On 8/14/01 defendant Beyres Answered "I spoke with Medicial. your getting the Medication you need, Our doctor is Taking Care of you Medicaly". (See Affidavit of Leon R. Murray Appendix (H)).

Defendants (A).

1. Pliantiff States that He requested Medical/Mental Health Care to defendants Callen, Conger, Riviera who said they would inform Medical.

2. Pliantiff States defendant Probasco denied Scheduling Pliantiff to See Mental Health Based on a Non Medical Reason.

3. Pliantiff States Dr. Stickers did not refer Him ~~to~~ A Mental Health Specilist on their one Time Visit on 8/16/00.

4. Pliantiff States He was not refered to a Mental Health Specilist on 8/5/00 when He wrote His frist grievance which was Lost, Stolen, Or After His 8/15/00 grievance To Capt. Wright who took no Action.

Defendants Subpart (B).

1. Pliantiff states defendants Dr. Slickers, And Probasco are responcible for deniening Pliantiff His Medication from 6/24/01 to 6/27/01.

2. Pliantiff States that defendants Dr. Slickers And Probasco are responsible for interrupting and changing pliantiffs Medical/Mental Health Plan from 8/12/01 thru 8/21/01.

3. Pliantiff States Defendant Beyers was aware of Pliantiffs Compliants on His 8/12/01 and 8/13/01 grievances, and took no Action But to Concurr with defendant Slickers ~~actions~~.

Damages / Injury

1. Plaintiff States That He was denied Mental Health Treatment after The 8/6/00 "Rage Attack" By The Defendants. This Denial Continued until ~~and~~ 8/31/00 when plaintiff was taken Back to the prison. His Stress, Axiety, pyschologicial problems went untreated.

2. Plaintiff was denied Medicial Attention after The 8/6/00 "Rage Attack" until 8/16/00 when He Seen Dr. Slickers. During This Time He Suffered from High Blood pressure, inflamation in His wrist, pian in His wrist And Sleep depreviation

3. Plaintiff Suffered physicial and Mental Anguish, and possible futher pschologicial Harm in the future.

4. Plaintiff requests nominal damages of

(1) dollar, Montary damages to be determined by The Jury And Punitive damages to Deter and punish the defendants from This action in The future,

Damages/inJury Subpart (B).

1. Pliantiff States He Suffered Sleep deprivation, pyclologicial distress when He was denied His Medication ON 6/24/01 thru 6/27/01. He futther was put at Risk For ~~[illegible]~~ SEIZURE after Abruptly Stopping His Medication.

2. Pliantiff states that He Suffered Sleep deprivation, Mood swings, and psycholosocial Harm when His Mental Health Plan WAS changed AND interrupted between 8/12/01 thru 8/21/01.

3. Pliantiff requests nominal damages of (1) dollar. Monetary Damages to be determined by the Jury. Pliantiff further requests punitive damages to deter and punish defendants from this action in the future in violation of clearly established Law i.e. Estelle v Gamble, 429 US 97 (1976); Boretti v Wiscomb, 930 F2d, 1150, 1154-55 (6th Cir 1991) (deliberate indifference because nurse interrupted prescribed Medical plan, despite Fact that prisoners wound Healed completely)

Dated This 5th day of December 2001

Leon R. Murray

LEON R. Murray
PliANtiFF Pro Se

# Certificate of Mailing

I, Leon Murray, Pliantiff Pro Se Hereby Certify That I Sent a True And Correct Copy of The Forgoing "THIRD AMENDED COMPLIANT" TO;

KIRTLAN G NAYLOR
NAYLOR & HALES
P.O. Box 16705
Boise, Idaho 83715

By Placing The Same in The US Mail VIA The Prison Mail System this 5th Day of December 2001.

Leon R. Murray
LEON R. MURRAY
Pro Se

# IDAHO DEPARTMENT OF CORRECTION
# OFFICIAL TIME COMPUTATION REPORT

COMMITMENT NAME: MURRAY, LEON RICHARD IDOC NUMBER: 24820
LAST DATE CALCULATED: 11/20/2001 SEX: M PAGE: 1 OF 1

| | | |
|---|---|---|
| CASE NUMBERS | CR97-3054 | CR00-2711 |
| SENTENCE NUMBER | 2 | 3 |
| COUNTY | TWIN FALLS | TWIN FALLS |
| CRIME | BURGLARY | ASLT/BT PRSN |
| COUNTS(IDENTICAL TERMS) | 1 | 1 |
| DATE OF CRIME | 9 22 1997 | 08 06 2000 |
| MINIMUM SENTENCE | 2- 0- 0 | 4- 0- 0 |
| MAXIMUM SENTENCE | 10- 0- 0 | 5- 0- 0 |
| DATE OF SENTENCE | 05/26/1998 | 11/14/2001 |
| CC/CS TO SENTENCE | I | CS 2 |
| CONSECUTIVE BEGIN DATE | | 11/14/2001 |
| JURISDICTION BEGINS | | |
| JURISDICTION ENDS | | |
| JURISDICTION QUASHED | | |
| JAIL CREDITS | 249 | |
| RET JURIS CREDITS | | |
| MISC FORFEITS | | |
| RELEASED ON OWN RECOG | | |
| RELEASED ON BOND | | |
| CS NULL FORFEITS | | |
| PAROLE FORFEITS | | |
| ESCAPE FORFEITS | | |
| A.W.O.L. FORFEITS | | |
| MISC FORFEITS | | |
| PAROLE ELIGIBLE | 09/20/1999 | 11/14/2005 |
| FULL TERM EXPIRATION | 09/19/2011 | 09/19/2012 |

---

REMARKS:
SENTENCE 2 1-20-00:AUDIT.BC
SENTENCE 3 11-20-01 DC.RS.CK

COMPUTATIONAL TIME PERIODS:

| FROM DATE | TO DATE | DURATION | TYPE OF TIME PERIOD | NULL TIME APPLICABLE |
|---|---|---|---|---|
| 06/05/1998 | 11/20/2001 | 1264 | Present at Facility | |
| 05/26/1998 | 06/05/1998 | 10 | SENTENCE DATE | |

**INMATE COPY**

Appendix (A)

additional IMS

RECEIVED
NOV 19 2001
CENTRAL RECORDS

RECEIVED
NOV 19 2001
TFCCJF

DISTRICT COURT
Fifth Judicial District
County of Twin Falls - State of Idaho
NOV 15 2001
By ______ Clerk
______ Deputy Clerk

IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF TWIN FALLS

| | |
|---|---|
| THE STATE OF IDAHO,<br>Plaintiff.<br>VS<br>LEON RICHARD MURRAY,<br>Defendant. | Case No. CR 00-2711<br>JUDGMENT OF CONVICTION and ORDER OF COMMITMENT<br>DOB: 3-11-62<br>SS#: 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 |

24620

This matter came on for sentencing on the 14th day of November 2001, before the Honorable John C. Hohnhorst, District Judge. Appearing were Jon Brody, Deputy Prosecuting Attorney for Twin Falls County, State of Idaho; and the above-named defendant, Leon Richard Murray, with his counsel Casey Robinson, that time having been set for imposition of sentence in the above case for the crime of Battery Against Jailer or Correctional Officer, a felony, Idaho Code Section 18-915(c), 18-903.

THAT WHEREAS, the said defendant having been found guilty of Battery Against Jailer or Correctional Officer, a felony, having occurred on or about August 6, 2000, is hereby adjudged to be guilty thereof;



INMATE COPY

APPENdix (B)

IT IS THE ORDER OF THIS COURT that the defendant be committed to the custody and supervision of the Idaho State Board of Corrections at Boise, Idaho, for a period not to exceed five (5) years, four (4) years determinate and one (1) year indeterminate. This sentence is consecutive to the sentence currently being served by the defendant.

The defendant is, therefore, remanded to the custody of the Twin Falls County Sheriff to be delivered by him into the custody of the proper officials of the Board of Corrections.

DATED this 15th day of November 2001.

JOHN C. HOHNHORST
District Judge

cc: Pros
P.Def
P+P
Sheriff
Dept. Corr



INMATE COPY

## INMATE CONCERN

Inmate Name: Leon Murray
Number: 24820
Housing Block and Cell: IMSI B-Blk Cell #94
Date: June 6, 2000
To: B-Blk Unit Sargent
Issue/Concern: Today I was let out to rec For Approximatly (3) hours (which I didn't have a major problem with) However when I came back and the restraints were taken off my right wrist and thumb area has been numb for the last 9 hours since rec. I have put in a Medical ki... However since I am challenging the use of restraints During Excercise Time I feel I am compelled to make you aware of this situation and my ongoing concern over this poli...

Signature Leon Murray

Reply: Let me know what medical says

Sgt [signature]
Signature/Title

6/12/00
Date

M-4

Idaho Department of Correction
Correctional Medical Services

**MEDICAL REQUEST DISPOSITION / RESPONSE**

INMATE NAME: Murray Leon IDOC#: 24820

HU: B DATE: 6/9/00

We have taken the following actions in response to your medical request / communication dated ____________

| | |
|---|---|
| | Your request has been denied. |
| | Medication / Prescription has been ordered for you. Come to pill call on ____________ |
| | You will be scheduled to see the ☐ CLINICIAN ☐ PHYSICIAN ☐ SPECIALIST ☐ CMS SUPV'R ☐ DIRECTOR OF NURSING ☐ HS ADMINISTRATOR ☐ DIETICIAN |
| | Your request has been forwarded to ☐ DENTAL ☐ OPTOMETRY |
| | Medications have arrived for you. Pick them up during pill call on ____________ |
| | You will be scheduled. Watch the call-out. |
| | You are scheduled for ☐ LAB TESTS ☐ X-RAYS ☐ MINOR SURGERY |
| | Your request has been forwarded to the psychology staff. |
| | A requisition is being processed for you request. |
| | We are researching your problem and will keep you advised. |
| | Lab results show no significant abnormalities. |
| | Lab results are abnormal, you will be scheduled for follow-up. Watch the call-out. |
| | X-ray results show no significant abnormalities. |
| | X-ray results are abnormal, you will be scheduled for follow-up. Watch the call-out. |
| | Other: |

Signature [signature]

OP-029

On 6/6/00 you kited concerning a double cuff memo. this has been approved. also you complained about numbness I your thumb this is a common problem when cuffs are Involved. this should go away with in a couple of weeks. If not please Re kite and let medical know

M-5

Idaho Department of Correction
Correctional Medical Services

(94)

## OFFENDER MEDICAL STATUS REPORT B

NAME: Murray Leon IDOC #: 24820 DATE: 6-8-00

This report indicates current medical status, changes, and / or updates regarding the above named offender and supersedes all previous Medical Status Reports.

| STATUS CATEGORY | ADD | DELETE | REMARKS | EXPIRATION DATE |
|---|---|---|---|---|
| Recreation Restriction | | | | |
| Medical Lay In | | | | |
| Medical Idle | | | | |
| Lower Bunk | | | | |
| Work Limitation | | | | |
| Meals in Tier/Unit | | | | |
| Cotton Blankets | | | | |
| Ice Memo | | | | |
| Medical Hold | | | | |
| Food Handling | | | | |
| Special Diet | | | | |
| Shaving | | | | |
| ~~Other:~~ Medical Cuffs | X | | | 6-8-01 |

L Nicholson CRNP
Medical Staff

cc: Unit B-Blk
Unit Sergeant
Inmate
Recreation
DW Security
Food Services
Laundry
Social Worker
Control

OP-017

M-6

Idaho Department of Correction
Correctional Medical Services

63

## MEDICAL REQUEST DISPOSITION / RESPONSE

INMATE NAME: MURRAY IDOC#: 24820

HU: B62 DATE: 2/27/01

We have taken the following actions in response to your medical request / communication dated ______

| | |
|---|---|
| | Your request has been denied. |
| | Medication / Prescription has been ordered for you. Come to pill call on ______ |
| ✓ | You will be scheduled to see the ☒ CLINICIAN PA. ☐ PHYSICIAN ☐ SPECIALIST ☐ CMS SUPV'R ☐ DIRECTOR OF NURSING ☐ HS ADMINISTRATOR ☐ DIETICIAN |
| | Your request has been forwarded to ☐ DENTAL ☐ OPTOMETRY |
| | Medications have arrived for you. Pick them up during pill call on ______ |
| | You will be scheduled. Watch the call-out. |
| | You are scheduled for ☐ LAB TESTS ☐ X-RAYS ☐ MINOR SURGERY |
| | Your request has been forwarded to the psychology staff. |
| | A requisition is being processed for you request. |
| | We are researching your problem and will keep you advised. |
| | Lab results show no significant abnormalities. |
| | Lab results are abnormal, you will be scheduled for follow-up. Watch the call-out. |
| | X-ray results show no significant abnormalities. |
| | X-ray results are abnormal, you will be scheduled for follow-up. Watch the call-out. |
| | Other: About your wrist problem. |

Signature [signature]

OP-029

M-7

Idaho Department of Correction
Correctional Medical Services

## MEDICAL REQUEST DISPOSITION / RESPONSE

INMATE NAME: Murray IDOC#: 24820

HU: B DATE: 3/1/01

We have taken the following actions in response to your medical request / communication dated 3/1/01

| | |
|---|---|
| | Your request has been denied. |
| | Medication / Prescription has been ordered for you. Come to pill call on ______ |
| | You will be scheduled to see the ☐ CLINICIAN ☐ PHYSICIAN ☐ SPECIALIST ☐ CMS SUPV'R ☐ DIRECTOR OF NURSING ☐ HS ADMINISTRATOR ☐ DIETICIAN |
| | Your request has been forwarded to ☐ DENTAL ☐ OPTOMETRY |
| | Medications have arrived for you. Pick them up during pill call on ______ |
| | You will be scheduled. Watch the call-out. |
| | You are scheduled for ☐ LAB TESTS ☐ X-RAYS ☐ MINOR SURGERY |
| | Your request has been forwarded to the psychology staff. |
| | A requisition is being processed for you request. |
| | We are researching your problem and will keep you advised. |
| | Lab results show no significant abnormalities. |
| | Lab results are abnormal, you will be scheduled for follow-up. Watch the call-out. |
| | X-ray results show no significant abnormalities. |
| | X-ray results are abnormal, you will be scheduled for follow-up. Watch the call-out. |
| X | Other: After discussion with security and |

Dr. Hill, we have decided not to give you a wrist brace at this time.

Signature [signature]

OP-029

M-8